UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 11 |
| | |
| East End Bus Lines, Inc., | Case No. 818-76176-845 |
| Montauk Transit Service LLC, | Case No. 818-76179-845 |
| Montauk Student Transport LLC, | Case No. 818-76177-845 |
| Montauk Transit LLC, | Case No. 818-76716-845 |
| East End Bus Service LLC, | Case No. 818-76717-845 |
| | (Jointly Administered) |
| Debtors. | |

-------------------------------------------------------------------X

## AMENDED DISCLOSURE STATEMENT

East End Bus Lines, Inc. ("East End"), Montauk Transit Service LLC ("Montauk Service"), Montauk Student Transport LLC ("Montauk Student"), Montauk Transit LLC ("Montauk Transit") and East End Bus Service LLC ("EEB Service"), Debtors and Debtors-in-Possession (collectively "Debtors" or "EEB") submit this Amended Disclosure Statement to all creditors and parties in interest pursuant to Section 1125 of Title 11, United States Code ("Bankruptcy Code"), in order to disclose information important and necessary for a reasonably informed decision for each party in interest respecting their right to vote on, or otherwise participate in, confirmation proceedings concerning the Debtors' Amended Plan of Reorganization dated August 29, 2022 (the "Plan"), filed with the United States Bankruptcy Court for the Eastern District of New York.  (A copy of the Plan is attached to this Disclosure Statement as Exhibit "A," and the terms and definitions contained in the Plan are incorporated herein by reference.)

The purpose of this Disclosure Statement is to set forth sufficient information regarding (i) the history of the Debtors in their business, (ii) the filing of the Chapter 11 cases, (iii) the Plan and the alternatives to the Plan, (iv) the claims of claimants and to assist them in making an

informed decision with respect to the Plan, and (v) to assist the Court in making an informed decision as to whether the Plan complies with the requirements of the Bankruptcy Code.

Information contained in this Disclosure Statement summarizes the Plan and should not be relied upon solely for voting purposes.  Parties in interest are urged to read the Plan carefully, and are further urged to consult with counsel in order to understand the Plan fully.  The Plan, if confirmed, is a legally binding document.

NO STATEMENTS, INFORMATION OR REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO THEIR FUTURE BUSINESS OPERATIONS, PROFITS OR FINANCIAL CONDITIONS), ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE.  THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM THE BOOKS AND RECORDS OF THE DEBTORS MAINTAINED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES AND GREAT EFFORT WAS MADE TO INSURE ITS ACCURACY.

THE ADEQUACY OF THIS DISCLOSURE STATEMENT WAS SUBJECT TO A HEARING IN THE BANKRUPTCY COURT ON OCTOBER 27, 2022.  PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE, THE BANKRUPTCY COURT DETERMINED THAT THE INFORMATION CONTAINED HEREIN IS OF THE KIND, AND SUFFICIENTLY DETAILED, TO ENABLE A HYPOTHETICAL, REASONABLE TYPICAL INVESTOR TO MAKE AN INFORMED JUDGMENT WHETHER

TO VOTE TO ACCEPT OR REJECT THE PLAN. HOWEVER, THE BANKRUPTCY COURT'S DETERMINATION ON THE ADEQUACY OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS APPROVAL OR ENDORSEMENT AS TO THE FAIRNESS OR MERITS OF THE PLAN BY THE BANK-RUPTCY COURT.

By Order of November 2, 2018 the Court authorized the Debtors cases to be jointly administered for the ease of record keeping and judicial economy. The Debtors sought to substantively consolidate the five (5) cases but due to the fact that the cases were relatively new, the Court determined that the motion was premature and the Debtor withdrew the application without prejudice. Substantive consolidation means that separately filed cases are treated as one case, which has an impact upon Debtors' and creditors' rights.

In these cases, the Debtors are each owned by John Mensch and were operated to some degree independently from each other and in certain aspects, they were operated as one (1). The Debtors and their professionals believe it would be a virtual impossibility to unwind all of the transactions by and between the Debtors over the past few years as many of the creditors are creditors of each of the Debtors with different rights. For example, some lenders financed vehicles titled in names of each of the different Debtors and obtained cross corporate guarantees of the entire debt.

The Debtors have determined that substantive consolidation may not be appropriate in these cases due to the fact that certain creditors would only have a claim against a particular debtor. Thus, the Debtors are submitting a combined Disclosure Statement and Plan but sets forth below how each creditors in each of the cases are treated. The Debtors reserve the right to seek substantive consolidation if deemed appropriate.

Except as described below, the Plan may be confirmed only if accepted by each

3

impaired class of claimants entitled to vote thereon. The Bankruptcy Code defines "acceptance" as acceptance by holders of a majority in number and two-thirds (2/3) of the total dollar amount of the claims in each class actually voting in the class. Any voting class of claimants that fails to accept the Plan will be deemed to have rejected the Plan.

Annexed hereto and accompanying this Disclosure Statement are copies of the following:

i. The Plan (Exhibit "A");

ii. An income statement reflecting results of operations from 9/13/18 through 6/30/22 (Exhibit "B");

iii. A balance sheet of the Debtors as of 6/30/22 (Exhibit "C");

iv. A liquidation analysis of the Debtors as of 6/30/22 (Exhibit "D");

v. Financial projections for the Debtors for school years 2022-2023, 2023-2024, 2024-2025 and 2025-2026 (Exhibit "E");

vi. A schedule of the unexpired leases and executory contracts which the Debtors believe they will assume on or before the Effective Date (Exhibit "F");

vii. A schedule of the claims to which the Debtors will be filing objections (Exhibit "G"); and

viii. The Funding Agreement between the Debtors and KTJ Bus Company, LLC (Exhibit "H").

The financial information contained in this Disclosure Statement and its annexed Schedules were prepared by the Debtors from the Debtors' books and records and in accordance with generally accepted accounting principles. The Debtors' monthly operating reports and the Schedules were prepared in accordance with generally accepted accounting principles. All efforts have been made to assure that the information contained is accurate.

The Bankruptcy Court will set a date by which the ballots for the acceptance or

rejection of the Plan are required to be submitted in writing by the holders of all classes of claims that are impaired under the Plan.  Creditors may vote on the Plan, after this Disclosure Statement shall be approved by the Bankruptcy Court, by completing and mailing the ballot to Weinberg, Gross & Pergament LLP 400 Garden City Plaza, Suite 309, Garden City, New York 11530, (516) 877-2424, Attention:  Marc A. Pergament, Esq.

1.    Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor seeks to reorganize its business and financial affairs.  A debtor may also liquidate its assets and wind up its affairs in Chapter 11.

On September 13, 2018, East End Bus Lines, Inc., Montauk Transit Service LLC and Montauk Student Transport LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and on October 5, 2018, Montauk Transit LLC and East End Bus Service LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, ("Petition Dates").  From the Petition Dates through this date, the Debtors have operated their business and managed their affairs as Debtors-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.  These sections of the Bankruptcy Code permit existing management of a Chapter 11 debtor to continue to operate as a debtor within the structure of Chapter 11.  No unsecured creditors' committee was appointed or formed in these cases.

2.    Formulation and Confirmation of a Plan of Reorganization

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case.  A Plan sets forth the means of satisfying or discharging the holders of claims against and interests in a Chapter 11 debtor.  Chapter 11 does not require that each holder of a claim

against the debtor vote in favor of a Plan in order for a Bankruptcy Court to approve a Plan. If any class of claimants is impaired by a Plan, the Plan must be accepted by at least one "impaired" class of claims. A claim that will not be repaid in full or as to which legal rights are altered, or an interest that is adversely affected, is deemed impaired. The holder of an impaired claim or interest is entitled to vote to accept or reject a claim if the claim or interest has been allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Rule 3018 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Acceptance by a class must be by a majority in number and two-thirds of the dollar amounts of the total claims or interest actually voting in the class.

3.    <u>Funding for the Debtor's Plan</u>

KTJ Bus Company, LLC will be acquiring one hundred percent (100%) of the stock in the Reorganized Debtors in exchange for the financial accommodations discussed below. The Debtors strongly urge their creditors to vote in favor of their Plan as it will result in continuation of the Debtors' business; will permit the Debtors' four hundred seventy-six (476) employees to retain their positions; and insure competition in the school bus transportation business.

The Debtors have entered into an agreement with KTJ Bus Company, LLC, which has agreed to provide a capital infusion of $400,000.00 to the Debtors in exchange for one hundred (100%) percent of the stock of the Reorganized Debtors. KTJ Bus Company, LLC is owned by Jennifer Thomas. Ms. Thomas has been a senior officer of the Debtors for the last several years concentrating on human resources and operations.

Pursuant to the agreement between KTJ Bus Company, LLC and the Debtors, John Mensch, who has been the chief executive officer of the Debtors from inception, will continue in that position and oversee the operation of the Debtors with a total compensation of $350,000.00 per year,

plus health insurance and related benefits.

The Debtors' largest creditors have consented to this arrangement, which would ensure continued orderly operation of the Debtors' business, especially considering the relationship that Mr. Mensch has developed with the school districts, which will ensure continued provision of the services to the school districts and not require any modification in those operations. A change in ownership and management requires school district approval and that approval will be obtained.

4.    Information Regarding Debtors

The following is a brief overview of (a) the Debtors' business and their history, (b) the events leading to the filing of Chapter 11; and (c) the Debtors' relationship with their secured and unsecured creditors. The vast majority of the Debtors' creditors are creditors who provided funds for the Debtors to purchase school buses. Those secured creditors were given liens on the buses that were financed by those creditors.

1.    Debtors' Business and their History

(1)    Montauk Transit Service LLC ("Montauk Service") was founded in October 2011 by John Mensch with the focus on obtaining school bus contracts in the State of New Jersey. Over time, Montauk Service's business grew and provided services to three (3) school districts in the State of New Jersey. Montauk Service has a good working relationship with the school districts and there are no issues for Montauk Service's continued performance under the school transportation contracts.

(2)    East End Bus Lines, Inc. ("East End") was established in April 2017 by John Mensch with the focus on obtaining and servicing school bus contracts in Suffolk County.

7

Over time, East End's business grew and it started providing bus transportation services to the South Country School District and the Longwood School District and it had a good working relationship with those districts.  In 2016, East End was the successful bidder on a school contract with the William Floyd School District, which eventually was the cause for these Debtors to have to file for Chapter 11.  East End was awarded the school contract with the understanding that the revenues to be paid was to be approximately $14,500,000.00 but starting in January 2017, only four (4) months after the contract started, William Floyd School District asserted that there was an overpayment, and it made substantial changes in the bus routes, which resulted in East End only collecting on a yearly basis approximately $11,300,000.00 for the contract.   East End suffered losses of approximately $3,000,000.00 per year and sustained those losses for two (2) years.

In July 2018, East End met with the William Floyd School District's officials and tried to discuss modification of the contract and also the modification of the routes with the hope of avoiding litigation.  Those suggestions were rejected and without legal or factual basis, William Floyd School District terminated the contract and contracted with Bauman Bus, which ultimately was unable to perform half of the contract, and it was replaced by First Student, a competitor of the Debtor in the New York Metropolitan area.

In August 2019, the Bankruptcy Court approved East End's sale of its Longwood School District contract for $1,250,000.00 to First Student and East End also sold buses that were financed with Commercial Credit Group.  The Longwood School District contract was to expire on June 30, 2020.  The sale closed in late August 2019.

(3)    Montauk Student Transport LLC ("Montauk Student") was established in 2011 by John Mensch with the focus of obtaining school contracts in the upstate New York region,

8

including Orange and Putnam Counties.  Montauk Student was successful in obtaining contracts

with three (3) school districts, the Putnam Valley School District and the Wallkill School District.

Montauk Student has a good working relationship with those school districts and there are no

issues with Montauk Student's performance of those contracts.  These contracts are titled in the

name of Orange County Transit LLC, but all revenues are transferred to the Debtors.  The contract

with the Peekskill School District expired by its own terms on June 30, 2019.

(4)      Montauk Transit LLC ("Montauk Transit") was established in May 2018 by

John Mensch for the principal purpose to serve as a payroll company for the operation of contracts

and continued to operate as a payroll company after the cases that were filed on September 13,

2018.  A judgment creditor, which had obtained a judgment against East End, Montauk Student,

Montauk Transit and EEB Service froze the bank account of Montauk Transit, which required it

to file a bankruptcy petition, which resulted in the lifting of the restraint on the bank account.

(5)      East End Bus Service LLC ("EEB Service") was established in April 2018

by John Mensch for the principal purpose to serve as a payroll company for the operation of the

Suffolk County School Contracts and continued to operate as a payroll company after the cases

that were filed on September 13, 2018.  It was also required to file a bankruptcy petition when a

judgment creditor froze its bank account.

The Debtors believe that they have streamlined their operations, and with the

necessary capital infusion, that they will be able to improve their profitability and meet their

obligations to their creditors under the Plan.  Consolidated financial projections are annexed hereto

as Exhibit "E" as the Reorganized Debtors will operate as one (1) entity to reduce costs and will

be substantively consolidated upon confirmation.

5.    <u>Debtor-in-Possession Management</u>

Following the filing of the Bankruptcy Petitions, the Debtors continued in the operation and management of their business.

The Debtors have entered into a Plan Support and Debtor-in-Possession Financing Agreement with Merchants Automotive Group, Inc. ("Merchants"), which will ensure that the Debtors will be able to replace school buses as they reach their required age termination whereby Merchants agreed to finance the Debtors' purchase of new or used buses on favorable lease terms. The motion for Bankruptcy Court approval was granted on October 8, 2019.  With that arrangement, the Debtors will also be able to bid on new contracts in the States of New Jersey and New York to further increase the Debtors' sales and profitability.  Due to that arrangement, contracts with school districts have been obtained as reflected in the Projections (Exhibit E.)

The Debtors believe that with the financial backing of Merchants and the ability to obtain new buses, that additional revenues would further improve the Debtors' profitability and their ability to meet their obligations under the Plan.

By reason of the Debtors negotiating with the secured creditors and the termination of the William Floyd School District contract, the Debtors slowly improved their cash flow and will permit them to merge from bankruptcy.

From July 1, 2021 to June 30, 2022, Montauk Service has earned a profit of $2,783,585.00.  (See Statement of Operations annexed hereto as Exhibit "B.")

From September 13, 2018 to June 30, 2022, East End had a loss of $7,520,535.00. (See Statement of Operations annexed hereto as Exhibit "B.")

From September 13, 2018 to June 30, 2022, Montauk Student had a loss of

10

$5,696,194.00.  (See Statement of Operations annexed hereto as Exhibit "B.")

From October 5, 2018 to June 30, 2022, Montauk Transit had no revenues as it operated as a payroll company.  (See Statement of Operations annexed hereto as Exhibit "B.")

From October 5, 2018 to June 30, 2022, East End Service had no revenues as it operated as a payroll company.  (See Statement of Operations annexed hereto as Exhibit "B.")

Upon the filing of the bankruptcy petitions, the Debtors sought and obtained the entry of an Order permitting the Debtors to utilize the cash collateral that was generated from the operation of the school contracts.  TCJ and Commercial Credit Group, which each held a security interest in the Debtors' school contracts pursuant to security agreements and recorded Uniform Commercial Code financing statements, consented to the Debtors' use of that cash collateral and that continued throughout the pending cases.  As set forth below, the Debtors have restructured their loan agreement with Commercial Credit Group and Medford Funding LLC, which purchased TCJ's security interest and claims, and with most of other secured creditors, which has substantially reduced the Debtors' monthly debt service payments.

6.    Post Confirmation Operation of the Debtors

The Debtors presently intend to continue to operate with a small management staff with those employees necessary for daily operation.  The management will consist of:

John Mensch - Chief Executive Officer - Mr. Mensch, who has more than twenty five (25) years of experience in the management and operation of school bus companies will continue to provide those services for the Debtors' business.

Christina Langston - Ms. Langston, who has served as the Comptroller for the Debtors for the last several years, will continue in that position and continue to assist Mr. Mensch in the

overseeing of the financial operations of the Debtors.

Jennifer Thomas - Ms. Thomas will serve as Chairman of the Debtor's Board of Directors and will continue to oversee human resources and assist in the Debtors' management.

a.    Insider Transactions

Since the filing of the Petition, there have been no loan transactions between the Debtors and any insider.  There are no pre-petition obligations due the Debtors from insiders.

b.    Pending Litigation

There is no present litigation involving the Debtors, except a claim has been asserted by the National Labor Relations Board relating to the termination of an employee of Montauk Service and the lawsuit brought by the Debtors against Valley Central School District.

The Debtors dispute the employee's claim and have retained special labor counsel to represent it.

With respect to the Valley Central School District lawsuit, it is pending in the Bankruptcy Court and Valley Central School District filed a motion to dismiss the lawsuit and it is fully submitted for determination.  The Debtors are seeking damages in excess of $1,000,000.00.

7.    Preference and Other Claims Under 11 U.S.C. Sections 544(b), 547, 548, 549 and 550 as Assets of the Estate

After a review of the Debtors' books and records by the Debtors and the Debtors' accountants, pursuant to Section 547 of the Bankruptcy Code, there are possible preferential payments made within ninety (90) days of the commencement of these cases.  The alleged preferential transfers are less than $300,000.00.  Further, the Debtors did not uncover any claims against insiders or other entities under 11 U.S.C.§§544(b), 547, 548, 549 and 550, or applicable state

law.

8.    Agreements with Landlords

(a)    Montauk Service is a tenant at the premises at 945 Somerset, Route 27, Somerset, New Jersey.  Montauk Service is current on all post-petition payments to that landlord, Penn Jersey Certified Concrete Inc., which is not an affiliate, and the Plan provides for the Reorganized Montauk Service to assume the lease which expires in 2026.

(b)    East End is a tenant at the real property located at 3605 Horseblock Road, Medford, New York and that real property is owned by an affiliate of the East End.  East End is a month to month tenant at that location.

(c)    Montauk Student is a sub-tenant at the premises located at 201 Charles Street, Maybrook, New York and the tenant is an affiliate of Montauk Student.  Montauk Student is a month to month sub-tenant and Montauk Student will continue to operate its business from that location and continue to pay market rent.

9.    Summary of the Plan

The following is a summary of certain provisions of the Plan. It is not a complete restatement of the Plan and it is qualified in its entirety by the provisions of the Plan.  Because the Plan deals with legal concepts and incorporates the provisions and requirements of the Bankruptcy Code, you may wish to consult with your attorney in making a decision regarding your vote with respect to the Plan.

a.    Classification of Claims and Interests

A claim is in a particular class only to the extent that the claim qualifies within the description of that class and is in a different class to the extent that the remainder of the claim

13

qualifies within the description of the different class.

All Allowed Claims and allowed interests are divided into the following classes, which classes will be mutually exclusive:

(A)    Montauk Service

i.    Montauk Service Class 1 (Administrative Claims).  Class 1 will consist of all claims against Montauk Service for any costs or expenses of the Chapter 11 cases allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of Montauk Service's estate, operation of Montauk Service's business and all allowances of compensation or reimbursement of expenses of Montauk Service's attorneys and accountants to the extent permitted by the Court.

All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by Montauk Service or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

(1)    On the Effective Date; or

(2)    Upon such terms as may exist due to the ordinary course of business of the debtor; or

(3)    As may be agreed to by the Claimants and Montauk Service; or

(4)    As may be ordered by the Court.

Montauk Service's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately Three Hundred Fifty Thousand and 00/100 ($350,000.00) Dollars for representation of Montauk Service, and Giambalvo, Stalzer & Company, CPAs, P.C., Montauk Service's accountants, will seek the sum of approximately One Hundred Thousand 00/100

14

($100,000.00) Dollars.

There are no other Administrative Claims other than accrued but not due quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course of the debtor's business.  These fees plus statutory interest will continue to be incurred until the Court's entry of a Final Decree.

ii.    <u>Montauk Service Class 2</u>.  Class 2 consists of the secured claim of Medford. Medford has agreed, following negotiations with the Debtors, to accept $2,000,000.00 in full satisfaction of its debt and it shall be fully satisfied by monthly installments with interest at eleven (11%) percent per annum for two (2) years.  Medford will retain the lien previously granted by the Debtors to TCJ and approved by the Court in the Debtors-in-Possession Financing Order and Medford's lien includes its lien on the Debtors' school contracts and extensions of the contracts and on certain older school buses.  The claim of TCJ as evidenced by the Loans and Loan Documents was assigned to MidCap and then assigned to Medford Funding LLC ("Medford") pursuant to the Stipulation and consolidated with an additional loan to KTJ to fund the Global Compromise. The unpaid balance of the agreed principal owed by the Debtors to Medford attributable to the assigned claim of TCJ has been discounted to $2,000,000.00, plus interest then accrued and unpaid on such discounted principal balance from June 15, 2022, attorneys' fees and costs. The existing lien originally granted to TCJ on, inter alia, the prepetition school contracts and all renewals with respect thereto are the collateral of Medford Funding LLC.  In the event the Debtors default with respect to this debt, after notice of default having been issued and not cured, Merchants Automotive Group Inc. ("Merchants") shall have the option to purchase Medford's claim and security interest and the original collateral in which the Debtors granted TCJ a security

15

interest (subject to the clarifying exclusion below) in exchange for payment of the then unpaid balance of the discounted principal then owed by the Debtors to Medford, that is the unamortized balance of $2,000,000.00 plus all accrued and unpaid interest. In the event Merchants exercises that option and acquires Medfords' claim at par and without recourse, Medford shall assign its claim and lien on TCJ's original collateral including, inter alia, the prepetition school contracts and the renewals to Merchants but such collateral specifically excludes any collateral that constitutes real property.  For the purposes of this paragraph, "Stipulation" means the Stipulation and Order (i) Allowing the Secured Claims Held by MidCap XVII Trust (ii) Dismissing with Prejudice, all Pending Objections, Motions and Challenges to Such Claims and (iii) Approving Debtor-in-Possession Financing [Dkt. No. 646] ("Original Stipulation"), filed in the Bankruptcy Case and approved by order of the Court [Dkt. No. 661], which Original Stipulation was amended by Amendment to the Original Stipulation which was approved by Order of the Bankruptcy Court entered on June 6, 2022 [Dkt. No. 810]. Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Stipulation.  The Debtors retain the right to prepay the debt in full without penalty.

   iii. <u>Montauk Service Class 3</u>.  Class 3 consists of the secured lease claim of Merchants.  Merchants retains a lien on three hundred and thirty-three (333) of the Debtors' school buses.   The Debtors and Merchants entered into a Plan Support and Debtor-in-Possession Financing Agreement, which was approved by the Bankruptcy Court at a hearing on October 8, 2019.  Under that agreement, Merchants has agreed to accept monthly payments from the Debtors collectively of $351,854.70 through August 1, 2026.  In addition, at the expiration of the lease term, the school buses will be will be returned to Merchants by the Debtors,, subject to the terms

of the lease.  No payments are due in August and September of each year

           iv.    <u>Montauk Service Class 4</u>.  Class 4 consists of the secured claim of Commercial Credit Group.  The Debtors have entered into a new financing agreement with Commercial Credit Group, which was subject to a hearing before the Bankruptcy Court on November 7, 2019 and the Court approved the agreement.  Under the agreement, the Debtors collectively are to pay Commercial Credit Group $2,736,883.00 in monthly installments with interest, in the sum of $40,849.00 per month with no payments in July and August of each year. The last payment is due on March 15, 2026.  Commercial Credit Group will retain its lien and security interest in the Debtor's assets as provided in the loan documents executed between Commercial Credit Group and the Debtors and the Stipulation of Settlement previously approved by Order of the Bankruptcy Court dated December 4, 2020 (the "Stipulation of Settlement"). Nothing herein is meant to amend, impair or alter the terms of the Stipulation of Settlement.  The Debtors reserve the right to prepay without penalty the amount due and owing to Commercial Credit Group.

           v.    <u>Montauk Service Class 5</u>. Class 5 consists of the secured claim of De Lage Landen.  De Lage Landen was owed the sum of $407,202.00.  Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, Montauk Service agreed to make sixty (60) monthly payments of $6,786.70 with no payments in July and August.  Payments commenced in June 2019 and the last payment is due on May 15, 2025.  De Lage Landen will retain its lien with respect to the vehicles and Montauk Service reserves the right to prepay without penalty the amount due and owing to De Lage Landen.

           vi.    <u>Montauk Service Class 6</u>.  Class 6 consists of the secured claim of Trans Ed.

Trans Ed was owed the sum of $63,772.67. Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, Montauk Service agreed to make fifty (50) monthly payments of $5,500.00 with no interest and with no payments in July and August. Payments commenced in June 2019. The last payment is due on September 12, 2023. Trans Ed will retain its lien with respect to the vehicles and Montauk Service reserves the right to prepay without penalty the amount due and owing to Trans Ed.

        vii.    <u>Montauk Service Class 7</u>. Class 7 consists of the secured claim of Wells Fargo Equipment. Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, the Debtors agreed to pay Wells Fargo Equipment the sum of $525,000.00 in eighty four (84) monthly installments with interest at four (4%) present per annum commencing April 2019. The Debtors shall pay $7,176.12 per month for its vehicles that Wells Fargo Equipment holds a lien and the Debtors reserve the right to prepay without penalty the amount due and owing. The last payment is due on March 1, 2026.

        viii.    <u>Montauk Service Class 8</u>. Class 8 consists of the secured claim of TCF Equipment Finance, which has asserted a claim in the sum of $67,218.35 and that claim shall be satisfied by monthly payments with a balance of $53,524.70 with interest for seven (7) years with no payments in July and August of each year. TCF Equipment Finance shall retain its lien with respect to the three (3) vehicles, which were financed by Montauk Service through TCF Equipment Finance and Montauk Service reserves the right to prepay without penalty the amount due and owing to TCF Equipment Finance. The last payment is due on September 1, 2027.

        ix.    <u>Montauk Service Class 9</u>. Class 9 consists of the priority claims of the: (a) Internal Revenue Service; (b) New York State Department of Taxation & Finance; and (c) New Jersey

Department of Taxation.

x.    Montauk Service Class 10.  Class 10, which is impaired, will consist of all Allowed Unsecured Claims, including claims arising from the rejection of executory contracts and unexpired leases.  There are thirteen (13) claims asserted in the aggregate of $30,745.529.18 and will be paid a pro rata share of the sum of $200,000.00, which is approximately one (1%) percent of the claims, as follows: (a) $40,000.00 on the Effective Date, $40,000.00 on or before January 15, 2023, $40,000.00 on or before January 15, 2024, $40,000.00 on or before January 15, 2025, and $40,000.00 on or before January 15, 2026.  Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the Reorganized Montauk Service in its sole discretion without penalty.

xi.    Montauk Service Class 11  Class 11 consists of the holders of common stock of the Debtor.  The stock will be canceled.  The Reorganized Montauk Service will issue one hundred percent (100%) of its stock to KTJ Bus Company LLC in exchange for the financial accommodations noted above.

All shares of Reorganized Montauk Service stock to be issued will be exempt from the registration requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934 pursuant to the provisions of Section 1145 of the Bankruptcy Code, in accordance with Section 1145 of the Bankruptcy Code.

Claimants in classes 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 may elect to reject the Plan.  This may result in:  (a) a cramdown; (b) the filing of an amended plan by the proponent which may treat such creditors better, or worse; or (c) may call for a liquidation of the Debtor.  Creditors may also be able to offer their own plan.  New plans are subject to a new vote.  Since that may result in a liquidation

19

of the Debtor, creditors should carefully review this Disclosure Statement in order to determine how to vote in their best interest.

In this case, claimants in Classes 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 are entitled to vote and their votes will be solicited.

(B)    Montauk Student

i.    Montauk Student Class 1 (Administrative Claims).  Class 1 will consist of all claims against Montauk Student for any costs or expenses of the Chapter 11 cases allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of Montauk Student's estate, operation of Montauk Student's business and all allowances of compensation or reimbursement of expenses of Montauk Student's attorneys and accountants to the extent permitted by the Court.

All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by Montauk Student or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

(1)    On the Effective Date; or

(2)    Upon such terms as may exist due to the ordinary course of business of the debtor; or

(3)    As may be agreed to by the Claimants and Montauk Student; or

(4)    As may be ordered by the Court.

Montauk Student's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately Two Hundred Fifty Thousand and 00/100 ($250,000.00) Dollars for representation of Montauk Student, and Giambalvo, Stalzer & Company, CPAs, P.C., Montauk Student's accountants,

20

will seek the sum of approximately Sixty Five Thousand 00/100 ($65,000.00) Dollars.

There are no other Administrative Claims other than accrued but not due quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course of the Debtor's business. These fees plus statutory interest will continue to be incurred until the Court's entry of a Final Decree.

ii.    <u>Montauk Student Class 2</u>. Class 2 consists of the secured claim of Medford Funding LLC ("Medford"). Medford has agreed, following negotiations with the Debtors, to accept $2,000,000.00 in full satisfaction of its debt and it shall be fully satisfied by monthly installments with interest at eleven (11%) percent per annum for two (2) years with no payments in July and August of each year. Medford will retain the lien previously granted by the Debtors and approved by the Court in the Debtors-in-Possession Financing Order and Medford's lien includes its lien on the Debtors' school contracts and extensions of the contracts and on certain older school buses. The claim of TCJ as evidenced by the Loans and Loan Documents was assigned to MidCap and assigned to Medford Funding LLC ("Medford") pursuant to the Stipulation and consolidated with an additional loan to KTJ to fund the Global Compromise. The unpaid balance of the agreed principal owed by the Debtors to Medford attributable to the assigned claim of TCJ has been discounted to $2,000,000.00, plus interest then accrued and unpaid on such discounted principal balance from June 15, 2022, attorneys' fees and costs. The existing lien originally granted to TCJ on, inter alia, the prepetition school contracts and all renewals with respect thereto are the collateral of Medford Funding LLC. In the event the Debtors default with respect to this debt, after notice of default having been issued and not cured, Merchants Automotive Group Inc. ("Merchants") shall have the option to purchase Medford's claim and

security interest and the original collateral in which the Debtors granted TCJ a security interest (subject to the clarifying exclusion below) in exchange for payment of the then unpaid balance of the discounted principal then owed by the Debtors to Medford, that is the unamortized balance of $2,000,000.00 plus all accrued and unpaid interest. In the event Merchants exercises that option and acquires Medfords' claim at par and without recourse, Medford shall assign its claim and lien on TCJ's original collateral including, inter alia, the prepetition school contracts and the renewals to Merchants but such collateral specifically excludes any collateral that constitutes real property. For the purposes of this paragraph, "Stipulation" means the Stipulation and Order (i) Allowing the Secured Claims Held by MidCap XVII Trust (ii) Dismissing with Prejudice, all Pending Objections, Motions and Challenges to Such Claims and (iii) Approving Debtor-in-Possession Financing [Dkt. No. 646] ("Original Stipulation"), filed in the Bankruptcy Case and approved by order of the Court [Dkt. No. 661], which Original Stipulation was amended by Amendment to the Original Stipulation which was approved by Order of the Bankruptcy Court entered on June 6, 2022 [Dkt. No. 810]. Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Stipulation.  The Debtors retain the right to prepay the debt in full without penalty.

        iii.    <u>Montauk Student Class 3</u>.  Class 3 consists of the secured lease claim of Merchants.  Merchants retains a lien on three hundred and thirty-three (333) of the Debtors' school buses.  The Debtors and Merchants entered into a Plan Support and Debtor-in-Possession Financing Agreement, which was approved by the Bankruptcy Court at a hearing on October 8, 2019.  Under that agreement, Merchants has agreed to accept monthly payments from the Debtors collectively of $351,854.70 through August 1, 2026.  In addition, at the expiration of the lease

term, the school buses will be returned to Merchants, subject to the terms of the lease.  No payments are due in July and August of each year.

iv.    <u>Montauk Student Class 4</u>.    Class 4 consists of the secured claim of Commercial Credit Group.  The Debtors have entered into a new financing agreement with Commercial Credit Group, which was subject to a hearing before the Bankruptcy Court on November 7, 2019 and the Court approved the agreement.  Under the agreement, the Debtors are to pay Commercial Credit Group $2,736,883.00 in monthly installments with interest, in the sum of $40,849.00 per month with no payments in July and August of each year.  The last payment is due on March 15, 2026.  Commercial Credit Group will retain its lien and security interest in the Debtors' assets as provided in the loan documents executed between Commercial Credit Group and the Debtors and the Stipulation of Settlement previously approved by the Court dated December 4, 2020 (the "Stipulation of Settlement.")  Nothing herein is meant to amend, impair or alter the terms of the Stipulation of Settlement.  The Debtors reserve the right to prepay without penalty the amount due and owing to Commercial Credit Group.

v.    <u>Montauk Student Class 5</u>.  Class 5 consists of the secured claim of De Lage Landen.  De Lage Landen was owed the sum of $420,000.00.  Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, Montauk Student agreed to make sixty (60) monthly payments of $8,144.04 with no payments in July and August.  Payments commenced in June 2019 and the last payment is due on May 15, 2026.  De Lage Landen will retain its lien with respect to the vehicles and Montauk Student reserves the right to prepay without penalty the amount due and owing to De Lage Landen.

vi.    <u>Montauk Student Class 6</u>.  Class 6 consists of the secured claim of Wells Fargo

23

Equipment.  Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, the Debtors agreed to pay Wells Fargo Equipment the sum of $525,000.00 in eighty four (84) monthly installments with interest at four (4%) present per annum commencing in April 2019.  The last payment is due on March 1, 2026.  The Debtors shall pay $7,176.00 per month for its vehicles that Wells Fargo Equipment holds a lien and the Debtors reserve the right to prepay without penalty the amount due and owing.

vii.    <u>Montauk Student Class 7</u>.  Class 7, which is impaired, will consist of all Allowed Unsecured Claims, including claims arising from the rejection of executory contracts and unexpired leases.  There are eight (8) claims asserted in the aggregate of $20,993,698.00 and will be paid a pro rata share of the sum of $100,000.00, which is approximately one half (1/2) of one (1%) percent of claims, as follows: (a) $20,000.00 on the Effective Date, $20,000.00 on or before January 15, 2023, $20,000.00 on or before January 15, 2024, $20,000.00 on or before January 15, 2025 and $20,000.00 on or before January 15, 2026.  Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the Reorganized Montauk Student in its sole discretion without penalty.

viii.    <u>Montauk Student Class 8</u>.  Class 8 consists of the holders of common stock of Montauk Student.  The stock will be canceled.  The Reorganized Montauk Student will issue one hundred percent (100%) of its stock to KTJ Bus Company LLC in exchange for the financial accommodations noted above.

All shares of Reorganized Montauk Student stock to be issued will be exempt from the registration requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934 pursuant to the provisions of Section 1145 of the Bankruptcy Code, in accordance with Section 1145

of the Bankruptcy Code.

Claimants in classes 2, 3, 4, 5, 6, 7 and 8 may elect to reject the Plan.  This may result in:  (a) a cramdown; (b) the filing of an amended plan by the proponent which may treat such creditors better, or worse; or (c) may call for a liquidation of the Debtor.  Creditors may also be able to offer their own plan.  New plans are subject to a new vote.  Since that may result in a liquidation of Montauk Student, creditors should carefully review this Disclosure Statement in order to determine how to vote in their best interest.

In this case, claimants in Classes 2, 3, 4, 5, 6, 7 and 8 are entitled to vote and their votes will be solicited.

(C)    <u>East End</u>

i.    <u>East End Class 1</u> (Administrative Claims).  Class 1 will consist of all claims against East End for any costs or expenses of the Chapter 11 cases allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of East End's estate, operation of East End's business and all allowances of compensation or reimbursement of expenses of East End's attorneys and accountants to the extent permitted by the Court.

All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by East End or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

(1)    On the Effective Date; or

(2)    Upon such terms as may exist due to the ordinary course of business of the debtor; or

(3)    As may be agreed to by the Claimants and East End; or

25

(4)     As may be ordered by the Court.

East End's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately Two Hundred Fifty Thousand and 00/100 ($250,000.00) Dollars for representation of East End, and Giambalvo, Stalzer & Company, CPAs, P.C., East End's accountants, will seek the sum of approximately Sixty Five Thousand 00/100 ($65,000.00) Dollars.

There are no other Administrative Claims other than accrued but not due quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course of the Debtor's business.  These fees plus statutory interest will continue to be incurred until the Court's entry of a Final Decree.

ii.     <u>East End Class 2</u>.  Class 2 consists of the secured claim of Medford Funding LLC ("Medford").   Medford has agreed, following negotiations with the Debtors, to accept $2,000,000.00 in full satisfaction of its debt and it shall be fully satisfied by monthly installments with interest at eleven (11%) percent per annum for two (2) years with no payments in July and August of each year.  Medford will retain the lien previously granted by the Debtors and approved by the Court in the Debtors-in-Possession Financing Order and the Medford's lien includes its lien on the Debtors' school contracts and extensions of the contracts of certain older school buses.  The claim of TCJ as evidenced by the Loans and Loan Documents was assigned to MidCap and assigned to Medford Funding LLC ("Medford") pursuant to the Stipulation and consolidated with an additional loan to KTJ to fund the Global Compromise. The unpaid balance of the agreed principal owed by the Debtors to Medford attributable to the assigned claim of TCJ has been discounted to $2,000,000.00, plus interest then accrued and unpaid on such discounted principal balance from June 15, 2022, attorneys' fees and costs. The existing lien originally granted to TCJ

26

on, inter alia, the prepetition school contracts and all renewals with respect thereto are the collateral of Medford Funding LLC.  In the event the Debtors default with respect to this debt, after notice of default having been issued and not cured, Merchants Automotive Group Inc. ("Merchants") shall have the option to purchase Medford's claim and security interest and the original collateral in which the Debtors granted TCJ a security interest (subject to the clarifying exclusion below) in exchange for payment of the then unpaid balance of the discounted principal then owed by the Debtors to Medford, that is the unamortized balance of $2,000,000.00 plus all accrued and unpaid interest. In the event Merchants exercises that option and acquires Medfords' claim at par and without recourse, Medford shall assign its claim and lien on TCJ's original collateral including, inter alia, the prepetition school contracts and the renewals to Merchants but such collateral specifically excludes any collateral that constitutes real property.  For the purposes of this paragraph, "Stipulation" means the Stipulation and Order (i) Allowing the Secured Claims Held by MidCap XVII Trust (ii) Dismissing with Prejudice, all Pending Objections, Motions and Challenges to Such Claims and (iii) Approving Debtor-in-Possession Financing [Dkt. No. 646] ("Original Stipulation"), filed in the Bankruptcy Case and approved by order of the Court [Dkt. No. 661], which Original Stipulation was amended by Amendment to the Original Stipulation which was approved by Order of the Bankruptcy Court entered on June 6, 2022 [Dkt. No. 810]. Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Stipulation.  The Debtors retain the right to prepay the debt in full without penalty.

       iii.   <u>East End Class 3.</u>  Class 3 consists of the secured lease claim of Merchants. Merchants retains a lien on three hundred and thirty-three (333) of the Debtors' school buses.  The Debtors and Merchants entered into a Plan Support and Debtor-in-Possession Financing

Agreement, which was approved by the Bankruptcy Court at a hearing on October 8, 2019. Under that agreement, Merchants has agreed to accept monthly payments from the Debtors of $351,854.70 through August 1, 2026. In addition, at the expiration of the lease term, the school buses will be returned by the Debtors to Merchants, subject to the terms of the lease. No payments are due in August and September of each year.

      iv.   <u>East End Class 4</u>. Class 4 consists of the secured claim of Commercial Credit Group. The Debtors have entered into a new financing agreement with Commercial Credit Group, which was subject to a hearing before the Bankruptcy Court on November 7, 2019 and the Court approved the agreement. Under the agreement, the Debtors are to pay Commercial Credit Group $2,736,883.00 in monthly installments with interest, in the sum of $40,849.00 per month with no payments in July and August of each year. The last payment is due on March 15, 2026. Commercial Credit Group will retain its lien and security interest in the Debtors' assets as provided in the loan documents executed between Commercial Credit Group and the Debtors and the Stipulation of Settlement previously approved by Order of the Bankruptcy Court dated December 4, 2020 (the "Stipulation of Settlement.") Nothing herein is meant to amend, impair or alter the terms of the Stipulation of Settlement. The Debtors reserve the right to prepay without penalty the amount due and owing to Commercial Credit Group.

      v.   <u>East End Class 5</u>. Class 5 consists of the secured claim of De Lage Landen. De Lage Landen was owed the sum of $340,000.00. Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, East End agreed to make sixty (60) monthly payments of $6,592.79 with no payments in July and August. Payments commenced in June 2019 and the last payment is due on May 15, 2026. De Lage Landen will retain its lien with respect to

28

the vehicles and East End reserves the right to prepay without penalty the amount due and owing to De Lage Landen.

    vi. <u>East End Class 6</u>.  Class 6 consists of the secured claim of Wells Fargo Equipment.  Pursuant to a Settlement Agreement previously approved by the Bankruptcy Court, the Debtors agreed to pay Wells Fargo Equipment the sum of $525,000.00 in eighty four (84) monthly installments with interest at four (4%) present per annum commencing in April 2019 and the last payment is due on March 1, 2026.  The Debtors shall pay $7,176.00 per month for its vehicles that Wells Fargo Equipment holds a lien and the Debtors reserve the right to prepay without penalty the amount due and owing.

    vii. <u>East End Class 7</u>.  Class 7 consists of the secured claim of NEC Equipment Finance.  Pursuant to a Settlement Agreement, East End agreed to pay NEC Equipment Finance monthly payments of $6,970.81 for seven (7) years and the first payment commenced on March 1, 2021 with no payments in July and August of each year and the last payment is due on February 1, 2028.  NEC Equipment Finance shall retain its lien and security interest in the Debtors' assets as provided in the NEC Equipment Finance loan documents executed between NEC Equipment Finance and the Debtors and the Stipulation of Settlement previously approved by Order of the Bankruptcy Court dated April 22, 2021 (the "Stipulation of Settlement.")  Nothing herein is meant to amend, impair or alter the terms of the Stipulation of Settlement.  East End reserves the right to prepay without penalty the amount due and owing to NEC Equipment Finance.

    viii. <u>East End Class 8</u>.  Class 8 consists of the priority claims of the: (a) Internal Revenue Service; and (b) New York State Department of Taxation & Finance.

    ix. <u>East End Class 9</u>.  Class 9, which is impaired, will consist of all Allowed

Unsecured Claims, including claims arising from the rejection of executory contracts and unexpired leases.  There are twenty eight (28) claims asserted in the aggregate of $36,903,590.00 and will be paid a pro rata share of the sum of $200,000.00, which is approximately one half (1/2) of one (1%) percent of claims, as follows: (a) $40,000.00 on the Effective Date, $40,000.00 on or before January 15, 2023, $40,000.00 on or before January 15, 2024, $40,000.00 on or before January 15, 2025 and $40,000.00 on or before January 15, 2026.  Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the Reorganized East End in its sole discretion without penalty.

        x.    <u>East End Class 10</u>.  (Stock Interests).  Class 10 consists of the holders of common stock of the Debtor.  The stock will be canceled.  The Reorganized East End will issue one hundred percent (100%) of its stock to KTJ Bus Company LLC in exchange for the financial accommodations noted above.

        All shares of Reorganized East End stock to be issued will be exempt from the registration requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934 pursuant to the provisions of Section 1145 of the Bankruptcy Code, in accordance with Section 1145 of the Bankruptcy Code.

        Claimants in classes 2, 3, 4, 5, 6, 7, 8, 9 and 10 may elect to reject the Plan.  This may result in:  (a) a cramdown; (b) the filing of an amended plan by the proponent which may treat such creditors better, or worse; or (c) may call for a liquidation of the Debtor.  Creditors may also be able to offer their own plan.  New plans are subject to a new vote.  Since that may result in a liquidation of the Debtor, creditors should carefully review this Disclosure Statement in order to determine how to vote in their best interest.

In this case, claimants in Classes 2, 3, 4, 5, 6, 7, 8, 9 and 10 are entitled to vote and their votes will be solicited.

(D)    Montauk Transit

    i.    Montauk Transit Class 1 (Administrative Claims).  Class 1 will consist of all claims against Montauk Transit for any costs or expenses of the Chapter 11 cases allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of Montauk Transit's estate, operation of Montauk Transit's business and all allowances of compensation or reimbursement of expenses of Montauk Transit's attorneys and accountants to the extent permitted by the Court.

    All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by Montauk Transit or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

    (1)    On the Effective Date; or

    (2)    Upon such terms as may exist due to the ordinary course of business of the debtor; or

    (3)    As may be agreed to by the Claimants and Montauk Transit; or

    (4)    As may be ordered by the Court.

    Montauk Transit's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately Ten Thousand Dollars and 00/100 ($10,000.00) Dollars for representation of Montauk Transit, and Giambalvo, Stalzer & Company, CPAs, P.C., Montauk Transit's accountants, will seek the sum of approximately Ten Thousand Dollars 00/100 ($10,000.00) Dollars.

    There are no other Administrative Claims other than accrued but not due

quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course of the Debtor's business. These fees plus statutory interest will continue to be incurred until the Court's entry of a Final Decree.

      ii.    <u>Montauk Transit Class 2</u>. Class 2 consists of the secured claim of Medford Funding LLC ("Medford"). Medford has agreed, following negotiations with the Debtors, to accept $2,000,000.00 in full satisfaction of its debt and it shall be fully satisfied by monthly installments with interest at eleven (11%) percent per annum for two (2) years with no payments in July and August of each year. Medford will retain the lien previously granted by the Debtors and approved by the Court in the Debtors-in-Possession Financing Order and the Medford's lien includes its lien on the Debtors' school contracts and extensions of the contracts, and on certain older school buses. The claim of TCJ as evidenced by the Loans and Loan Documents was assigned to MidCap and assigned to Medford Funding LLC ("Medford") pursuant to the Stipulation and consolidated with an additional loan to KTJ to fund the Global Compromise. The unpaid balance of the agreed principal owed by the Debtors to Medford attributable to the assigned claim of TCJ has been discounted to $2,000,000.00, plus interest then accrued and unpaid on such discounted principal balance from June 15, 2022, attorneys' fees and costs. The existing lien originally granted to TCJ on, inter alia, the prepetition school contracts and all renewals with respect thereto are the collateral of Medford Funding LLC. In the event the Debtors default with respect to this debt, after notice of default having been issued and not cured, Merchants Automotive Group Inc. ("Merchants") shall have the option to purchase Medford's claim and security interest and the original collateral in which the Debtors granted TCJ a security interest (subject to the clarifying exclusion below) in exchange for payment of the then unpaid balance of

the discounted principal then owed by the Debtors to Medford, that is the unamortized balance of $2,000,000.00 plus all accrued and unpaid interest. In the event Merchants exercises that option and acquires Medfords' claim at par and without recourse, Medford shall assign its claim and lien on TCJ's original collateral including, inter alia, the prepetition school contracts and the renewals to Merchants but such collateral specifically excludes any collateral that constitutes real property. For the purposes of this paragraph, "Stipulation" means the Stipulation and Order (i) Allowing the Secured Claims Held by MidCap XVII Trust (ii) Dismissing with Prejudice, all Pending Objections, Motions and Challenges to Such Claims and (iii) Approving Debtor-in-Possession Financing [Dkt. No. 646] ("Original Stipulation"), filed in the Bankruptcy Case and approved by order of the Court [Dkt. No. 661], which Original Stipulation was amended by Amendment to the Original Stipulation which was approved by Order of the Bankruptcy Court entered on June 6, 2022 [Dkt. No. 810]. Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Stipulation. The Debtors retain the right to prepay the debt in full without penalty.

     iii. <u>Montauk Transit Class 3</u>. (General unsecured claims). Class 3, which is impaired, will consist of all Allowed Unsecured Claims, including claims arising from the rejection of executory contracts and unexpired leases. There are four (4) claims asserted in the aggregate of $18,788,023.18 and will be paid a pro rata share of the sum of $12,500.00, which is approximately one tenth (1/10th) of one (1%) percent of the claims, as follows: (a) $2,500.00 on the Effective Date, $2,500.00 on or before January 15, 2023, $2,500.00 on or before January 15, 2024, $2,500.00 on or before January 15, 2025 and $2,500.00 on or before January 15, 2026. Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the

Reorganized Montauk Transit in its sole discretion without penalty.

        iv.     <u>Montauk Transit Class 4</u>.  (Stock Interests).  Class 4 consists of the holders of common stock of the Montauk Transit.  The stock will be canceled.  The Reorganized Montauk Transit will issue one hundred percent (100%) of its stock to KTJ Bus Company LLC in exchange for the financial accommodations noted above.

        All shares of Reorganized Montauk Transit stock to be issued will be exempt from the registration requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934 pursuant to the provisions of Section 1145 of the Bankruptcy Code, in accordance with Section 1145 of the Bankruptcy Code.

        Claimants in classes 2, 3 and 4 may elect to reject the Plan.  This may result in:  (a) a cramdown; (b) the filing of an amended plan by the proponent which may treat such creditors better, or worse; or (c) may call for a liquidation of the Debtor.  Creditors may also be able to offer their own plan.  New plans are subject to a new vote.  Since that may result in a liquidation of the Debtor, creditors should carefully review this Disclosure Statement in order to determine how to vote in their best interest.

        In this case, claimants in Classes 2, 3 and 4 are entitled to vote and their votes will be solicited.

(E)     <u>EEB Service</u>

        i.     <u>EEB Service Class 1</u> (Administrative Claims).  Class 1 will consist of all claims against EEB Service for any costs or expenses of the Chapter 11 cases allowed under Section 503(b) of the Bankruptcy Code, including all actual and necessary expenses for preservation of EEB Service's estate, operation of EEB Service's business and all allowances of compensation or

reimbursement of expenses of EEB Service's attorneys and accountants to the extent permitted by the Court.

All Allowed Administrative Claims will be paid in cash, in full, in such amounts as are incurred in the ordinary course of business by EEB Service or in such amounts as such Administrative Claims (such as professionals) are allowed by the Court:

(1)    On the Effective Date; or

(2)    Upon such terms as may exist due to the ordinary course of business of the debtor; or

(3)    As may be agreed to by the Claimants and EEB Service; or

(4)    As may be ordered by the Court.

Montauk Transit's counsel, Weinberg, Gross & Pergament LLP will seek the sum of approximately Ten Thousand Dollars and 00/100 ($10,000.00) Dollars for representation of EEB Service, and Giambalvo, Stalzer & Company, CPAs, P.C., EEB Service's accountants, will seek the sum of approximately Ten Thousand Dollars 00/100 ($10,000.00) Dollars.

There are no other Administrative Claims other than accrued but not due quarterly fees to the Office of the United States Trustee and expenses that are being paid in the normal course of the Debtor's business. These fees plus statutory interest will continue to be incurred until the Court's entry of a Final Decree.

ii.    <u>EEB Service Class 2</u>.  Class 2 consists of the secured claim of Medford Funding LLC ("Medford").  Medford has agreed, following negotiations with the Debtors, to accept $2,000,000.00 in full satisfaction of its debt and it shall be fully satisfied by monthly installments with interest at eleven (11%) percent per annum for two (2) years with no payments

in July and August of each year.  Medford will retain the lien previously granted by the Debtors and approved by the Court in the Debtors-in-Possession Financing Order and the Medford's lien includes its lien on the Debtors' school contracts and extensions of the contracts and on certain older school buses.  The claim of TCJ as evidenced by the Loans and Loan Documents was assigned to MidCap and assigned to Medford Funding LLC ("Medford") pursuant to the Stipulation and consolidated with an additional loan to KTJ to fund the Global Compromise. The unpaid balance of the agreed principal owed by the Debtors to Medford attributable to the assigned claim of TCJ has been discounted to $2,000,000.00, plus interest then accrued and unpaid on such discounted principal balance from June 15, 2022, attorneys' fees and costs. The existing lien originally granted to TCJ on, inter alia, the prepetition school contracts and all renewals with respect thereto are the collateral of Medford Funding LLC.  In the event the Debtors default with respect to this debt, after notice of default having been issued and not cured, Merchants Automotive Group Inc. ("Merchants") shall have the option to purchase Medford's claim and security interest and the original collateral in which the Debtors granted TCJ a security interest (subject to the clarifying exclusion below) in exchange for payment of the then unpaid balance of the discounted principal then owed by the Debtors to Medford, that is the unamortized balance of $2,000,000.00 plus all accrued and unpaid interest. In the event Merchants exercises that option and acquires Medfords' claim at par and without recourse, Medford shall assign its claim and lien on TCJ's original collateral including, inter alia, the prepetition school contracts and the renewals to Merchants but such collateral specifically excludes any collateral that constitutes real property. For the purposes of this paragraph, "Stipulation" means the Stipulation and Order (i) Allowing the Secured Claims Held by MidCap XVII Trust (ii) Dismissing with Prejudice, all Pending

36

Objections, Motions and Challenges to Such Claims and (iii) Approving Debtor-in-Possession Financing [Dkt. No. 646] ("Original Stipulation"), filed in the Bankruptcy Case and approved by order of the Court [Dkt. No. 661], which Original Stipulation was amended by Amendment to the Original Stipulation which was approved by Order of the Bankruptcy Court entered on June 6, 2022 [Dkt. No. 810]. Capitalized terms not defined in this paragraph shall have the meaning ascribed to them in the Stipulation. The Debtors retain the right to prepay the debt in full without penalty.

    iii. <u>EEB Service Class 3</u>. (General unsecured claims). Class 3, which is impaired, will consist of all Allowed Unsecured Claims, including claims arising from the rejection of executory contracts and unexpired leases. There are four (4) claims asserted in the aggregate of $18,788,023.00 and will be paid a pro rata share of the sum of $12,500.00, which is approximately one tenth (1/10th) of one (1%) percent of the claims, as follows: (a) $2,500.00 on the Effective Date, $2,500.00 on or before January 15, 2023, $2,500.00 on or before January 15, 2024, $2,500.00 on or before January 15, 2025 and $2,500.00 on or before January 15, 2026. Any payment to be made pursuant to this section may be prepaid in whole or in part at any time by the Reorganized EEB Service in its sole discretion without penalty.

    iv. <u>EEB Service Class 4</u>. (Stock Interests). Class 4 consists of the holders of common stock of the EEB Service. The stock will be canceled. The Reorganized EEB Service will issue one hundred percent (100%) of its stock to KTJ Bus Company LLC in exchange for the financial accommodations noted above.

    All shares of Reorganized EEB Service stock to be issued will be exempt from the registration requirements of the Securities Act of 1933 and the Securities Exchange Act of 1934

pursuant to the provisions of Section 1145 of the Bankruptcy Code, in accordance with Section 1145 of the Bankruptcy Code.

Claimants in classes 2, 3 and 4 may elect to reject the Plan. This may result in: (a) a cramdown; (b) the filing of an amended plan by the proponent which may treat such creditors better, or worse; or (c) may call for a liquidation of the Debtor. Creditors may also be able to offer their own plan. New plans are subject to a new vote. Since that may result in a liquidation of the Debtor, creditors should carefully review this Disclosure Statement in order to determine how to vote in their best interest.

In this case, claimants in Classes 2, 3 and 4 are entitled to vote and their votes will be solicited.

10.    <u>Voting and Confirmation Procedures</u>.

In order for a Plan to be confirmed, various statutory conditions must be satisfied, including (i) acceptance of a Plan by at least one impaired class entitled to vote on the Plan (ii) provision for payment of distribution to each claimant of money and/or property of equal value to what the claimant would have received in a Chapter 7 liquidation; and (iii) a finding by a Court that it is feasible.

a.    <u>Procedure for filing proofs of claim</u>.

The Plan provides that claims will be paid by the Debtors only if evidenced by a timely proof of claim that is allowed by the Court pursuant to Section 502 of the Bankruptcy Code or found to be undisputed or otherwise listed in the Debtors' schedules as undisputed, non-contingent and liquidated. The Court has issued an Order directing all claimants whose claims are either not scheduled as due by the Debtors or are scheduled as disputed, contingent or liquidated, to file a proof

38

of claim on or before January 7, 2019 ("bar date").

     b.     <u>Who May Vote</u>.

Under the Bankruptcy Code, pursuant to Sections 502(a) and 1126(a), a claimant is entitled to vote on a Plan of Reorganization or file an objection only if either (i) its claim has been scheduled by the Debtors and is not scheduled as disputed, contingent or liquidated, or (ii) it has filed the proof of claim on or before the last date set by Court.  As earlier set forth, in this case, January 7, 2019 was the last date for filing proofs of claim.

A claimant's vote may be disregarded if the Court determines that the claimant's acceptance or rejection of a Plan was not solicited or procured in accordance with the provisions of the Bankruptcy Code.

Only holders of claims and interests that are impaired under a Plan are entitled to vote on acceptance or rejection of the Plan.  Generally, Section 1124 of the Bankruptcy Code provides that a class of claims or interests is considered impaired unless a Plan does not alter the legal, equitable and contractual rights of the holder of each claim or interest in the Class.

     c.     <u>Voting Procedures</u>.

The Debtors are seeking the acceptance of holders of claims as set forth above.  A ballot will be sent when this Disclosure Statement is approved by the Bankruptcy Court.  Each holder of an allowed claim in those classes may vote on the Plan by then completing, dating and signing the ballot and filing the ballot as set forth below.

     i.     <u>Solicitation Period</u>.

In order to be counted, a ballot must be received no later than the date set by the Court.  The Court approved this Disclosure Statement on October 27,, 2022 and has permitted the

Debtors to solicit acceptances to its Plan.

Allowed claim holders' ballots must be received on or prior to _____, 2022.  Said ballots shall be sent to the following address:  Weinberg, Gross & Pergament LLP, 400 Garden City Plaza, Garden City, Suite 309, New York 11530, Attention:  Marc A. Pergament, Esq.

ii.    A ballot will be enclosed for each holder of claims eligible to vote on the Plan which will serve as a ballot for indicating acceptance or rejection of the Plan pursuant to the requirements of Sections 502 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018(c).  If you did not receive a ballot with this Disclosure Statement, when approved, you are not eligible to vote on the Plan.  If you have any questions concerning voting procedures, contact Marc A. Pergament, Esq. at (516) 877-2424, ext. 226.

iii.    <u>Contested Claims</u>.

The Debtors will not object to any claims except the claims identified on Exhibit "G."

d.    <u>Confirmation of the Plan</u>.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

i.    <u>Confirmation hearing</u>.

Section 1128 of the Bankruptcy Code requires the Court after notice, to hold a hearing on the confirmation of a Plan.  The Court scheduled December 15, 2022 at 11:00 a.m. as the date for the confirmation hearing for this case.  The hearing on confirmation of the Plan will be conducted at the United States Bankruptcy Court for the Eastern District of New York, Alfonse M. D'Amato Courthouse, 290 Federal Plaza, Room 970, Central Islip, New York.   Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of the Plan,

regardless of whether it is entitled to vote.

        ii.      <u>Objections to Confirmation</u>.

In the event the Bankruptcy Court approves this Disclosure Statement and pursuant to an appropriate court order, a party in interest may serve written objections to the confirmation of the Plan and file said written objection with the Clerk of the Bankruptcy Court, Alfonse M. D'Amato Courthouse, 290 Federal Plaza, Central Islip, New York and serve a copy upon counsel for the Debtor and the Office of the United States Trustee located at the Alfonse M. D'Amato Courthouse, 560 Federal Plaza, Central Islip, New York 11722.

Objections to confirmation of the Plan are made pursuant to Bankruptcy Rule 3020(b) and are governed by Bankruptcy Rule 9014 and as set forth in the Order approving this Disclosure Statement. UNLESS AN OBJECTION TO CONFIRMATION SHALL BE FILED AND SERVED IN A TIMELY MANNER, IT MAY NOT BE CONSIDERED BY THE COURT.

        iii.     <u>Requirements for the Confirmation of the Plan</u>.

At the confirmation hearing, the Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Court will enter an order confirming the Plan. The requirements include:

        (1)     <u>Best Interest Test</u>. With respect to each impaired class of claims, each holder of an allowed claim in the class has either accepted the Plan or receives under a Plan, property of a value, as of the effective date, that is not less than the amount the holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To determine if a Plan is in the best interest of each class, the probable results of a Chapter 7 liquidation must be compared with a result proposed under the Plan. Annexed as

Exhibit "D" to this Disclosure Statement is a liquidation analysis of the Debtors as of August 31, 2019 which establishes that the impaired claimants are receiving, under the Plan, property of value, as of the Effective Date, greater than the amount the holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code or they agreed to accept the Debtors' proposed distribution.

(2)     <u>Feasibility of the Plan</u>.  In order for a Plan to be confirmed, a Court must determine that a further reorganization or subsequent liquidation of the Debtors is not likely to result following confirmation of a Plan.  Annexed to this Disclosure Statement as Exhibit "E" is a financial projection for the Debtors' combined operation subsequent to the Effective Date which, the Debtors believe, clearly establishes that the test of feasibility has been met.

(3)     <u>Acceptance or Rejection by Impaired Classes</u>.  Section 1129(a) of the Bankruptcy Code generally requires that each impaired class must accept the Plan by the requisite votes for confirmation to occur.  A class of impaired claims will have accepted a Plan if, of the holders in the class actually voting, at least two-thirds in dollar amount and more than one-half in number of allowed claims, cast an affirmative vote.  The vote of any person can be disqualified pursuant to Section 1126(e) of the Bankruptcy Code.

(4)     <u>Conclusion</u>.  The Debtors believe the Plan satisfies all statutory requirements of Chapter 11 of the Bankruptcy Code, including the "feasibility" requirement.

11.     <u>Tax Consequences</u>.

The Debtors have not researched the Federal Income Tax consequences of the Plan for holders of claims and interest based upon the Internal Revenue Code of 1954, as amended, the Treasury Regulations promulgated thereunder, traditional authority, and current administrative rules and practice.  The Debtor has not requested a ruling from the Internal Revenue Service with respect

to these matters.  Accordingly, no assurance can be given to the interpretation by the Internal Revenue Service.  Further, the Federal Income Tax consequences to any particular claimant or interest holder may be affected by matters not discussed herein.  There also may be state, local or foreign tax considerations applicable to each claimant or holder of an interest.  EACH CLAIMANT AND HOLDER OF AN INTEREST IS URGED TO CONSULT HIS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS.

12.    <u>Alternatives to the Plan</u>.

The Debtors believe that the Plan affords holders of claims and interests the potential for the greatest realization of value for their claims and interests that is feasible under the circumstances.

The Debtors have considered alternatives to the Plan, including the liquidation of its assets and the closing of its business.  A liquidation under Chapter 7 of the Bankruptcy Code would not maximize the return to claimants as being afforded by the Plan.  Accordingly, the Debtors believe that this alternative does not afford a greater potential for the realization of value in the Estate's assets as does the Plan.

THE DEBTORS BELIEVE THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES EXPLORED BECAUSE IT WILL PROVIDE A GREATER RECOVERY TO ALL HOLDERS OF CLAIMS AND INTERESTS THAN THOSE AVAILABLE IF THE PLAN IS NOT CONFIRMED.  IN ADDITION, OTHER ALTERNATIVES WOULD INVOLVE SIGNIFICANT DELAY,

UNCERTAINTY AND SUBSTANTIAL ADDITIONAL COSTS OF ADMINISTRATION WITH NO CERTAINTY OF A BETTER RESULT.  ACCORDINGLY, THE DEBTORS URGE YOU TO VOTE IN FAVOR OF THE PLAN.

[The Remainder of this Page is Intentionally Blank]

[Signature page follows]

Dated: Center Moriches, New York
          November 3, 2022

                    East End Bus Lines, Inc.

By:     */s/ John Mensch*
          John Mensch, President

          Montauk Transit Service LLC

By:     */s/ John Mensch*
          John Mensch, President

          Montauk Student Transport LLC

By:     */s/ John Mensch*
          John Mensch, President

          Montauk Transit LLC

By:     */s/ John Mensch*
          John Mensch, President

          East End Bus Service LLC

By:     */s/ John Mensch*
          John Mensch, President

Dated: Garden City, New York
          November 3, 2022

          Weinberg, Gross & Pergament LLP
          Attorneys for Debtors and Debtors-in-Possession

By:     */s/ Marc Pergament*
          Marc A. Pergament
          400 Garden City Plaza, Suite 309
          Garden City, New York  11530
          (516) 877-2424 ext. 226